# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SWITCH, LTD.,

        Plaintiff,

vs.

UPTIME INSTITUTE, LLC; and UPTIME INSTITUTE PROFESSIONAL SERVICES, LLC,

        Defendants.

Case No.: 2:19-cv-00631-GMN-NJK

**ORDER**

Pending before the Court is the Partial Motion to Dismiss ("Motion to Dismiss"), (ECF No. 19), filed by Defendants Uptime Institute, LLC ("Uptime") and Uptime Institute Professional Services, LLC ("Uptime IPS") (collectively, "Defendants"). Plaintiff Switch, Ltd. ("Plaintiff") filed a Response, (ECF No. 30), and Defendants filed a Reply, (ECF No. 31). For the reasons discussed below, the Partial Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

I. <u>**BACKGROUND**</u>

This case arises from Defendants' allegedly fraudulent representations in connection with their data center certification business. Defendant Uptime, through its affiliate Defendant Uptime IPS, offers data center certification services. (First Am. Compl. ("FAC") ¶¶ 22–23, ECF No. 15). Defendants employ an allegedly proprietary four-"tier" classification standard to certify the quality of the design, construction, and/or operations of their customers' data centers. (*Id.* ¶¶ 23–27). The United States Patent and Trademark Office ("USPTO") awarded Defendants federal service mark registrations for the "tiers" of certification that Defendants

issue to their customers.[1] (*Id.* ¶¶ 15, 54–55, 71–77). Defendants represent that their certifications provide substantial value. (*Id.* ¶¶ 28–30, 33).

Plaintiff is a corporation that primarily designs, constructs, and operates data centers. (*Id.* ¶ 16). Based on Defendants' representations, Plaintiff paid Defendants over $225,000 to certify its SuperNap 8 Data Center's operations and over $260,000 to certify its SuperNap 9 Data Center's design, facility, and operations. (*Id.* ¶¶ 34–38). Despite receiving Defendants' highest "Tier IV" design, "Tier IV" facility, and "Tier IV Gold" certifications, Plaintiff alleges that the certifications have provided little value because Defendants' classification system misleads consumers shopping for data center services. (*Id.* ¶¶ 39–53).

Plaintiff argues that Defendants' certification scheme is inherently misleading. (*Id.*) The First Amended Complaint explains that Defendants certify a data center's design before the client builds the data center. (*Id.* ¶ 43). As a result of this certification scheme, Plaintiff alleges that some of Defendants' clients have received Tier IV design certifications like Plaintiff, but, unlike Plaintiff, they have built their data centers to plans of lower quality than the plans Defendants certified.[2] (*Id.* ¶¶ 43, 45–46). Although these customers would not receive Tier IV facilities or operations certifications, they tout themselves as certified Tier IV data centers. (*Id.*) Compounding the confusion, Defendants' website allegedly promotes its customers' design certifications in a manner that leads consumers to believe that the value of design certifications is akin to that of facilities or operations certifications. (*Id.* ¶ 44). Despite Plaintiff's repeated complaints to Defendants that Defendants' customers were misleading consumers by passing

---

[1] Plaintiff challenges Defendants' rights in the following marks: TIER GAP ANALYSIS (Reg. No. 4900276), UPTIME INSTITUTE TIER IV CERTIFIED (Reg. No. 4446381), ACCREDITED TIER SPECIALIST (Reg. No. 4503935), ACCREDITED TIER DESIGNER (Reg. No. 4503936), ATS ACCREDITED TIER SPECIALIST UPTIME INSTITUTE (Reg. No. 4670383), ATD ACCREDITED TIER DESIGNER UPTIME INSTITUTE (Reg. No. 4670382), and TIER-READY (Serial No. 87436668). (*Id.* ¶ 15).

[2] For example, Plaintiff alleges that a competing data center operator, ViaWest, received a Tier IV design certification, built its data center to a Tier III standard, and advertised itself as a Tier IV facility. (*Id.* ¶ 45).

off their design certifications as facilities or operations certifications that they had not earned, Defendants took no action to police their service marks. (*Id.* ¶¶ 45–48, 50).

Plaintiff alleges that Defendants damaged Plaintiff's business by misleading Plaintiff's customers into believing there is no distinction between Defendants' design, facilities, and operations certifications. (*Id.* ¶¶ 47, 50). To that end, Plaintiff argues that Defendants' certification scheme has deprived Plaintiff of business by causing its prospective consumers to believe competitors with inferior data center operations and facilities offer services of equal quality. (*Id.* ¶ 51). Relatedly, Plaintiff alleges that its customers demand lower prices because its competitors who pass themselves off as equally certified offer lower rates. (*Id.* ¶ 52).

Accordingly, the First Amended Complaint asserts claims for: (1) breach of contract; (2) deceptive trade practices; (3) fraudulent procurement of Defendants' service marks; (4) abandonment of Defendants' service marks; and (5) a declaratory judgment that it has not infringed Defendants' marks.[3] (*Id.* ¶¶ 95–133). Pursuant to its claims for relief, Plaintiff seeks damages and cancellation of Defendants' marks. (*Id.* 26:4–26:20).

In their Partial Motion to Dismiss, Defendants request that the Court dismiss all of Plaintiff's claims, excluding the breach of contract claim. (Partial Mot. to Dismiss ("MTD") 1:3–5, ECF No. 19). Defendants allege that: (1) Plaintiff has not pleaded its deceptive trade practices and fraudulent procurement of service mark claims with particularity as required under Federal Rule of Civil Procedure ("FRCP") 9(b); (2) the Court does not have subject matter jurisdiction over Plaintiff's claim for cancellation due to abandonment; and (3) Plaintiff cannot sufficiently plead a claim for declaratory judgment because there is no actual controversy or immediate threat of injury since Defendants have not brought an action for infringement. (*Id.* 4:7–19).

---

[3] Plaintiff has received federal registration for several service marks including the word "tier" that it uses to distinguish itself form its competitors. (*Id.* ¶¶ 83–90). Defendants have petitioned to cancel Plaintiff's marks. (*Id.* ¶¶ 91–93). Plaintiff seeks a declaratory judgment against infringement because Defendants' petitions contain the elements of an infringement claim. (*Id.* ¶¶ 92–94, 131).

## II. LEGAL STANDARD

### A. 12(b)(6)

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In assessing the sufficiency of a complaint, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must then consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged, *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), so that the complaint may not simply "lump multiple defendants together." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted). Rule 9(b)'s particularity requirement ensures that the defendants are on "notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotations omitted).

**B. 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP" or "Rules") permits motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**III. DISCUSSION**

The Court's below discussion addresses whether Plaintiff's allegations support each of its claims at issue in the Motion to Dismiss, beginning with Plaintiff's claim for deceptive trade practices.

**A. Deceptive Trade Practices**

Plaintiff alleges that Defendants have engaged in deceptive trade practices under the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stats. 598 *et seq*. (FAC ¶¶ 28–53, 101–110). The Court finds that Plaintiff has stated a claim with sufficient particularity to survive Defendants' Motion to Dismiss.

In relevant part, the NDTPA defines deceptive trade practices to include: "knowingly mak[ing] a false representation as to the . . . source . . . or certification of . . . services for sale;" and "represent[ing] that . . . services for sale . . . are of a particular standard, quality, or grade . . . if he or she knows or should know that they are of another standard, quality, grade, style or model." Nev. Rev. Stat. 598.0915(2), (7). To state a private right of action under the NDTPA,

a plaintiff must allege: (1) defendant violated the NDTPA, (2) causing plaintiff, (3) damages. *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–58 (D. Nev. 2009); *see also* Nev. Rev. Stat. 41.600(2)(e). To survive a motion to dismiss, the elements of an NDTPA claims must be pled with particularity pursuant to FRCP 9(b). *Horner v. Mortgage Elec. Registration Sys.*, 711 Fed. App'x. 817, 818 (9th Cir. 2017).

Plaintiff alleges two theories of Defendants' deceptive trade practices: (1) the certification scheme itself is misleading, and (2) Defendants made misleading representations in connection with promoting their certification services.

First, Plaintiff argues that Defendants intentionally deceive consumers because they know their certifications, particularly their design certifications, are inherently misleading. (FAC ¶ 104). Because Defendants know their design certifications are misleading, Plaintiff contends, they engage in a deceptive trade practice by promoting their customers' design certifications on their website. (*Id.* ¶ 105). Likewise, Defendants engage in deceptive trade practices by failing to police their clients' confusing use of the certifications. (*Id.* ¶¶ 40, 43–48, 106).

Based upon the facts as pled, the Court is not convinced that Defendants' use of an allegedly misleading certification scheme, which Plaintiff alleges is misleading because Defendants fail to police their marks, is a deceptive trade practice under Nevada law. Plaintiff's contentions indicate that its competitors use Defendants' design certifications in a misleading manner. The allegations do not describe with particularity any false statements that Defendants themselves have made regarding Plaintiff's competitors' design certifications. Rather, Plaintiff takes issue with the effect of Defendants' design certifications, not any false representations Defendants have made. Therefore, Plaintiff fails to state a deceptive trade practices claim against Defendants premised upon Defendants' customers' misleading statements.

Second, Plaintiff alleges that the representations Defendants make to promote the value of their certification scheme are misleading. Specifically, Plaintiff alleges that Defendants falsely represent that they created the proprietary "tier" classification scheme, which remains overseen by its original author.[4] (*Id.* ¶¶ 25, 29). However, Plaintiff claims that the scheme was actually created by a former client of Defendants' predecessor-in-interest for use throughout the industry. (*Id.* ¶¶ 26–27, 29–30, 107). Defendants compounded these allegedly false representations by (1) republishing the author's white papers that describe the classification scheme and omitting authorship or attribution credits with the intent to deceive the public, (*Id.* ¶¶ 31, 108); and (2) claiming that the system has unique value because it remains overseen by its creator, (*Id.* ¶ 32). Plaintiff alleges that, "[a]s a result of [Defendants'] false representations regarding [their] ownership and the exclusive nature of [their] alleged 'tier' certifications, [Plaintiff] believed [Defendants'] certification was of high value . . . ." (*Id.* ¶ 34). Plaintiff also alleges that Defendants falsely represented the value of their certifications as a distinguishing factor in the marketplace, which Defendants stated they alone could provide because they had exclusive ownership over the tier classification scheme. (*Id.* ¶¶ 28, 30, 41, 109).

Plaintiff argues that Defendants' representations regarding the value of their certifications, taken together, caused Plaintiff's damages by inducing it to purchase Defendants' services. (*Id.* ¶ 34–38). Plaintiff suffered damages by (1) paying Defendants for services that did not have the characteristics promised, and (2) losing business from the confusing nature of Defendants' certification scheme. (*Id.* ¶¶ 34–38, 51–52).

The Complaint's allegations regarding Defendants' marketing representations state a claim under the NDTPA with particularity because it alleges that Defendants knowingly

---

[4] Plaintiff quotes Defendants claiming, ". . . [t]he Standard is administered by the author of the standard itself, assuring the letter of the standard and encompassing the vast experience of our team. Tier Certification is not theory, it is fact. It is a recognized certification by an independent engineering team with a correctly implemented vision, and an implementation to meet stated business needs." (*Id.* ¶ 29).

misrepresented the nature or quality of their services.[5]  Plaintiff alleges that Defendants falsely promote that the author of the certification scheme oversees Defendants' certifications, when Plaintiff alleges that, in fact, the creator has no present affiliation with Defendants. (*Id.* ¶¶ 26–30).  Plaintiff unquestionably pleads the allegedly false statement with particularity; it quotes Defendants' marketing material. (*Id.* ¶ 29).  Plaintiff alleges that Defendants' representations regarding their exclusive rights in the scheme, which derive from the author's affiliation with Defendants, induced Plaintiff to enter a contract with Defendants, which ultimately caused Plaintiff's damages. (*See id.* ¶¶ 25–32, 34–36).  Therefore, under Rule 9(b), Plaintiff has adequately stated a claim for deceptive trade practices.

### B. Fraudulent Procurement of Service Marks

Regarding Plaintiff's claim for fraudulent procurement of service marks under the Lanham Act, the Court finds that the Complaint does not state a plausible claim for relief.  Plaintiff does not sufficiently plead that Defendants made false statements to the USPTO to procure their marks.

The Lanham Act creates a cause of action for damages and/or cancellation of a defendant's mark if the defendant obtained its mark by making fraudulent representations to the USPTO. *See* 15 U.S.C. § 1054(3); 15 U.S.C. §§ 1119–1120.  To assert a claim for fraudulent procurement of marks, a plaintiff must establish: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*, 897 F.3d 1008, 1019 (9th Cir. 2018).  Because the claim sounds

---

[5] Plaintiff's allegation that Defendants knowingly misrepresented the valuable effect of their services, standing alone, do not support an NDTPA claim.  Plaintiff does not allege that Defendants' services are not valuable in the data center operations marketplace.  Rather, Plaintiff argues that Defendants' certifications are not valuable relative to its competitors who have also acquired Defendants' certifications.  Therefore, the claims Defendants make about the valuable effect of their services may not be false when compared to uncertified data centers.

in fraud, a plaintiff must plead a fraudulent procurement claim with particularity. *See Kerzner Int'l v. Monarch Casino & Resort, Inc.*, No. 3:06-cv-232-ECR-RAM, 2009 U.S. Dist. LEXIS 11624 at *41 (D. Nev. 2009).

To demonstrate that Defendants made fraudulent statements, Plaintiff must allege that Defendants made intentionally false statements to the USPTO. *OTR Wheel Eng'g, Inc.* 897 F.3d at 1019. If Defendants subjectively believed their representations to the USPTO were true, then they did not act with the requisite degree of falsity. *See Intellimedia Sports, Inc. v. Intellimedia Corp.*, 43 U.S.P.Q.2d (BNA) 1203, 1206 (T.T.A.B. 1997).

Defendants argue that Plaintiff fails to plead the requisite elements with particularity. (*See* MTD 4:26–6:22, ECF No. 19). Plaintiff alleges that Defendants must have made fraudulent statements to the USPTO because it received service mark registration for marks that it uses as certification marks, and it avoided applying for certification mark registration because the rights associated with certification marks differ significantly from service marks. (FAC ¶¶ 54, 56–62, 66–69, 70–77, ECF No. 15). Specifically, Plaintiff argues that Defendants improperly asserted "that Uptime was using the marks for services in International Classes 35 and 42, when in fact, Uptime and/or Uptime IPS uses the marks to <u>certify</u> the goods/services of third-parties." (*Id.* ¶ 71).

Plaintiff has not sufficiently alleged that the statement is false. Even if Plaintiff used its registered service mark as a certification mark, Plaintiff does not explain to the Court why Defendants' representation that it used the "tier" marks in connection with services is false. Defendants did use the marks in connection with their certification services. Plaintiff has not shown that the USPTO's service mark application required Defendants to represent that it used its marks to identify the source of its own services.[6] Therefore, the Court dismisses Plaintiff's fraudulent procurement claims for damages and cancellation without prejudice.

---

[6] Defendants' use of service marks to certify others' services rather than identify the source of their own services in commerce raises questions regarding Defendants' rights in the marks; however, Plaintiff must plead that

## C. Abandonment

Plaintiff's Complaint asserts that the Court should order cancellation of Defendants' marks due to its abandonment of the marks. (FAC ¶¶ 121–129, ECF No. 15). Defendants do not respond to the substance of Plaintiff's argument, but instead assert that this Court lacks subject matter jurisdiction to cancel the marks. (MTD 6:23–8:17, ECF No. 19). The Court concludes that it has subject matter jurisdiction to order cancellation and denies Defendants' Motion to Dismiss Plaintiff's cancellation claim.

Under Section 37 of the Lanham Act, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. Section 37 does not create "an independent basis for federal jurisdiction." *Airs Aromatics, LLC v. Victoria Secret Stores*, 744 F.3d 595, 599 (9th Cir. 2014) (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011)) (internal quotations omitted). However, Section 37 enables federal district courts to hear cancelation claims "if there is already an ongoing action that involves the registered mark" over which the court has subject matter jurisdiction. *Id.* (explaining that the Ninth Circuit affirmed dismissal of plaintiff's cancellation claim with prejudice *because* plaintiff did not also appeal the dismissal of its breach of contract claim).

The instant case is "an ongoing action that involves the [Defendants'] registered mark[s]" over which this Court has subject matter jurisdiction. Plaintiff's Complaint has plausibly alleged two claims involving Defendants' marks—breach of contract and deceptive trade practices—for which it seeks relief other than cancellation. Therefore, pursuant to Section 37 of the Lanham Act, this Court has jurisdiction over Plaintiff's cancellation claims.

---

Defendants actually made a false statement in the procurement of their marks to raise those questions through a fraudulent procurement claim.

Defendants' Motion to Dismiss with respect to Plaintiff's cancellation claims is accordingly denied.

### D. Declaratory Judgment

Plaintiff seeks a declaratory judgment regarding the scope of the parties' rights to use their "tier" marks to describe the quality of data centers. (FAC ¶ 133, ECF No. 15). Defendants argue that the Court does not have subject matter jurisdiction over Plaintiff's claim for declaratory relief because there is no case or controversy regarding Plaintiff's possible infringement. (MTD 8:25–10:18). The Court finds that a case or controversy exists and it has subject matter jurisdiction to adjudicate the claim for declaratory relief.

Under the Declaratory Judgment Act, a party to an "actual controversy" may petition a federal court to "declare the rights and other legal relations" of the parties to the controversy. 28 U.S.C. § 2201. If the moving party does not make the requisite showing of an actual case or controversy, a claim for declaratory relief will fail for lack of subject matter jurisdiction under FRCP 12(b)(1). *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

In the trademark context, a case or controversy exists when "the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Id.* (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555–56 (9th Cir. 1990)). The court must take a "flexible approach" and evaluate the reasonableness of the plaintiff's perceptions of the conduct of defendant's "likely impact on competition and the risks imposed upon the plaintiff." *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982). Under the Ninth Circuit's flexible approach, specific threats of an infringement action are not required; veiled threats of potential litigation, including a notice of opposition before the USPTO including the elements of infringement, are sufficient. *See San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1155–56

(S.D. Cal. 2018) (collecting cases); *see also Neilmed Prods. v. Med-Systems*, 472 F. Supp. 2d 1178, 1181–82 (N.D. Cal. 2007).

Plaintiff has obtained federal registrations for several service marks including the word "tier" that it uses to promote the quality of its data centers, and it has applications pending for several similar marks. (FAC ¶¶ 83–90). Defendants have filed petitions for cancellation regarding Plaintiff's issued marks and notices of opposition regarding Plaintiff's pending applications, which set forth elements of trademark infringement claims. (*Id.* ¶¶ 91–93). Plaintiff alleges that the elements of Defendants' petitions for cancellation and notices of opposition have placed it in reasonable apprehension of potential liability for infringement. (*Id.* ¶¶ 94, 130–132).

Defendants make one argument in response to Plaintiff's claim for declaratory relief: the Court does not have jurisdiction to grant the declaratory judgment because there is no actual case or controversy between the parties. Defendants' argument does not align with the approach of district courts within the Ninth Circuit facing similar claims. Courts have routinely held that notices of opposition and petitions for cancellation containing the elements of an infringement action are sufficient to place a plaintiff in reasonable apprehension of liability for infringement. *See San Diego Cty. Credit Union*, 344 F. Supp. 3d at 1155–56 (collecting cases). Therefore, Plaintiff has alleged sufficient facts to establish this Court's subject matter jurisdiction over its claim for declaratory judgment.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss ("Motion to Dismiss"), (ECF No. 19), is **GRANTED in part** and **DENIED in part**. Plaintiff has plausibly alleged claims for deceptive trade practices, cancellation due to abandonment, and declaratory relief regarding infringement against Defendants. By contrast, Plaintiff has not plausibly

alleged claims for damages or cancellation premised upon Defendants' allegedly fraudulent procurement of its marks, and the claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that if Plaintiff elects to amend its claims that are dismissed without prejudice, Plaintiff shall have twenty-one days from the date of this Order to do so.

**DATED** this __3__ day of December, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court